United States District Court
Southern District of Texas
**ENTERED**
October 19, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KASIM M RHYAN, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-3599 |
| | § | |
| DW DIRECT, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM & ORDER

Defendant DW Direct, Inc., a satellite-television installation company, allegedly denied its satellite technicians overtime pay under the Fair Labor Standards Act (FLSA). In *Ames v. DW Direct, Inc.*, No. 18-cv-1885, this Court conditionally certified a class to proceed against DW Direct on those allegations. DW Direct alleged, however, that Plaintiff Kasim Rhyan had signed arbitration agreements. The Court therefore severed Rhyan's case from the *Ames* action. Before the Court is DW Direct's Motion to Compel Arbitration as to Rhyan (Docs. 10, 18).

### I.  Background

This is a FLSA overtime case. Rhyan contends that DW Direct and its CEO, Daniel Wilson, failed to pay time-and-a-half to satellite-installation technicians like Rhyan for time worked in excess of forty hours as required by the FLSA. (Doc. 1 at 1.)

Last year, this Court conditionally certified a class of DW Direct satellite technicians raising the same claims as Rhyan does. (Doc. 1 at 8 (citing *Ames v. Rhyan*, No. 18-cv-1885, Minute Entry, 4/29/2019).) Rhyan was excluded from the class because he had allegedly signed an arbitration agreement with DW Direct. (*Id.*) Rhyan argues that the arbitration agreement is illusory because it reserves a right of unilateral modification to DW Direct and because his signature was

1

improperly coerced. The documents and circumstances described below bear on those arguments.

Employee Handbook Introduction

Each DW Direct employee, upon commencing employment with the company, was provided with an Employee Handbook. (Doc. 25-1 at 21.) The Introduction to the Employee Handbook, as relevant here, provides:

- *DW Direct reserves the right to revise, supplement, or rescind any policies or portion of the handbook*, as it deems appropriate, in its sole and absolute discretion. The only exception to any changes is our employment-at-will policy permitting you or DW Direct to end our relationship for any reason at any time. Employees will, of course, be notified of changes to the handbook as they occur.

- *DW Direct expressly retains the right to unilaterally modify or amend this handbook*, at DW Direct's sole discretion, with or without notice to DW Direct's employees.

- Policies set forth in this handbook are not intended to create a contract, nor are they to be construed to constitute contractual obligations of any kind or a contract of employment, express or implied, between DW Direct and any of its employees. The provisions of the handbook have been developed at the discretion of management and, except for its policy of employment-at-will, *may be amended or canceled at any time, by DW Direct in its sole discretion*.

(Doc. 20-4 at 1 (emphasis added).) The Introduction thus reserves to DW Direct, at three different points, a right to unilaterally modify the terms of the Employee Handbook.

Policy 801

At some point, the Employee Handbook came to contain Policy 801, which pertains to arbitration. Although it is not perfectly clear from the record, it appears that Policy 801 was introduced into the Employee Handbook in March 2019, in direct response to the filing of the *Ames* lawsuit; only satellite technicians, not other DW Direct employees, were provided with new Employee Handbooks, and an accompanying document made express reference to Policy 801 alone among the Employee Handbook's provisions. (*See* Doc. 25-1 at 27–28, 37.)  Policy 801 requires DW Direct employees to arbitrate their disputes with DW Direct. (Doc. 18 at 46.) It also

provides, in apparent contrast to the Introduction of the Employee Handbook, that the arbitration policy "can only be revoked or modified by writing signed by the parties that specifically states intent to revoke or modify this Agreement." (Doc. 20 at 48.) Unlike the Introduction, then, Policy 801 appears to require the consent of both parties to modify the arbitration agreement.

### The "Employee Handbook Acknowledgment and Agreement to Arbitrate"

After adding Policy 801 to the Employee Handbook, DW Direct had its supervisors distribute a one-page Acknowledgment to its technicians for their signature. The Acknowledgment provided, in relevant part:

> I acknowledge that revisions to the handbook may occur . . . I further understand that DW Direct may, from time to time, announce revisions to these policies and that it is my responsibility to read and comply with any such revisions.
>
> I further understand that *DW Direct reserves the right to change the provisions of this handbook at any time and that my signature below indicates my agreement to abide by such changes*. Notwithstanding anything contained herein, I understand and voluntarily agree that, by my execution hereof, *I am agreeing to arbitrate all claims pursuant to policy 801*.

(Doc. 1-2 (emphasis added).) Thus, the Acknowledgment—the only document signed by Rhyan—again provided that DW Direct had a right of unilateral modification, including, apparently, of Policy 801.

### Allegations of Duress

Rhyan alleges that he was coerced into signing the Acknowledgment. The crux of his allegations is as follows:

> I was sent an arbitration agreement to sign and told that if I did not sign it, I would not get any more work . . . I was out in the field performing work for DW Direct at the time. I was basically threatened and told until I signed it, I would not work. . . . I asked if I could at least read it first and then [my manager] told me since I was refusing to sign it, I was being taken off of work for the day. . . . I was never given

3

> or shown [the policy by DW Direct before signing this acknowledgment. I just signed Exhibit 2-A because I was scared of losing more work and I needed my job to support my family.

(Doc. 16-2.)

Rhyan's coworker Carlton Malone filed an affidavit making similar allegations and adding that, when he refused to sign immediately, "the work that I had been previously assigned for that day was taken away from me. I was not given any more work until I signed it." (Doc. 16-1.)

After this Court granted limited discovery on the issue of coercion, Rhyan took the deposition of Rhyan's supervisor Shawn Whitaker. Whitaker testified that he never told Rhyan "that if he didn't sign the agreement he couldn't continue working," and that he "never had any discussions with the technicians regarding whether or not they had to sign it as a DW Direct employee." (Doc. 25-1 at 34.) He also, somewhat confusingly, testified that, "[t]he only discussion that we had, as far as the technicians, [was] that [the Acknowledgment] *needed* to be reviewed and signed." (*Id.* (emphasis added).)

Based on all the above, DW Direct moved to compel arbitration and Rhyan opposed the motion. The parties dispute (a) whether the arbitration agreement is illusory based on its plain language and (b) whether Rhyan was coerced into signing the Acknowledgment.

## II. Standard of Review

In adjudicating a motion to compel arbitration under the Federal Arbitration Act, courts begin by determining whether the parties agreed to arbitrate the dispute. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603, 605 (5th Cir.1995). The Court should consider: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. *Banc One Acceptance Corp. v. Hill,* 367 F.3d 426,

429 (5th Cir. 2004). The validity determination is generally made based on "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). The federal policy favoring arbitration does not apply to this initial determination of whether there is a valid agreement to arbitrate. *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).

### III.   Discussion

DW Direct argues that Rhyan must arbitrate his claims because "the parties entered into a valid, written contractual agreement, containing an arbitration clause." (Doc. 18 at 1.) Rhyan argues that the arbitration agreement is invalid and unenforceable because (1) it is "illusory as it provides Defendant the unilateral right to change the agreement to arbitrate without advance notice to Plaintiff rendering it invalid as a matter of law," and (2) "he never received a copy of the actual arbitration agreement and was forced to sign an acknowledgment under duress coupled with the threat that if he did not sign, he would not receive any more work." (Doc. 16 at 4.) The Court agrees with Rhyan's first argument and will therefore deny the Motion to Compel.

As Rhyan correctly notes, under Texas law, "an arbitration clause is illusory if one party can 'avoid its promise to arbitrate by amending the provision or terminating it altogether.'" *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012) (quoting *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010)); *see also Nelson v. Watch House Intern., LLC*, 815 F.3d 190, 196 (5th Cir. 2016) (similar); *Morrison v. Amway Corp.*, 517 F.3d 248, 253 (5th Cir. 2008) (similar).

Thus, the key issue here is whether the arbitration agreement is unilaterally modifiable by DW Direct and thus illusory. The agreement's three key provisions—the Introduction, Policy 801, and the Acknowledgment—are openly contradictory as to this issue. At two points—in the

Introduction to the Employee Handbook and in the Acknowledgment signed by Rhyan—the language reserves to DW Direct a unilateral right of modification. At another point—in Policy 801 itself—the language provides for only bilateral modification.

Unfortunately, neither party has provided the Court with a compelling basis for resolving this contradiction. Neither party even acknowledges the contradiction in its briefing; DW Direct does not mention the modification-related provisions at all, while Rhyan relies on the unilateral-modification provisions in the Introduction and Acknowledgment without mentioning the countervailing bilateral-modification provision in Policy 801.

The Court is thus left to resolve this issue using traditional canons of contract interpretation. The most obviously applicable doctrine is that, "where an ambiguity exists in a contract, the contract language will be construed strictly against the party who drafted it since the drafter is responsible for the language used." *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990). This doctrine resolves the case in Rhyan's favor. All of the relevant documents here were drafted by DW Direct, and they are at best hopelessly ambiguous. "The ambiguity in this case exists because of the way [DW Direct] chose to draft the [contract]," and its "failure to be consistent throughout the contract" is its responsibility. *See id.* Had DW Direct wanted to draft a valid arbitration clause, it "could have easily drafted" the contract to contain one. *See id.* It failed to do so, and it cannot now be heard to complain when the language it drafted is construed against its position.

Indeed, when questioned about this doctrine at the October 15, 2020, motion hearing, counsel for DW Direct acknowledged that it seemed applicable. DW Direct's only response was that the federal policy favoring arbitration weighs in the other direction. As the Court has noted, however, "this federal policy favoring arbitration does not apply to the determination of whether

there is a valid agreement to arbitrate between the parties; instead ordinary contract principles determine who is bound." *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). DW Direct has conceded the applicability of the "ordinary contract principle[]" that ambiguity is to be construed against the drafter; neither it nor the Court has identified another contract principle that would resolve the incoherent language in the contract.[1] Thus, because the contract appears to reserve a right to unilaterally modify the arbitration agreement to DW Direct, it is illusory and unenforceable.

Because the Court concludes that there is no valid arbitration agreement, it does not reach the question of whether Rhyan's signature was coerced. The Court notes briefly that the available evidence does not appear to establish that Rhyan lacked notice of the arbitration agreement but does create a legitimate question as to whether the signing of the arbitration agreement was procedurally unconscionable. Without live testimony, however, the Court declines to make a definitive ruling in either direction given that the issue can be resolved on other grounds.

---

[1] The Court has considered the application of two other canons of contract interpretation and found them both lacking. First, the Court considered the application of the doctrine that a "specific provision controls over a general provision." *City of The Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 722 (Tex. Ct. App. 2008). This doctrine might privilege the bilateral-modification provision in Policy 801 over the unilateral-modification provision in the Introduction, because the former pertains specifically to the arbitration agreement while the latter does not. But the unilateral-modification provision in the Acknowledgment is equally specific, appearing alongside a discussion of Policy 801—the only policy that the Acknowledgment references—so the specific-governs-the-general doctrine is of no use in resolving that tension. Second, the Court considered the application of the doctrine that, where "multiple documents comprise a written contract[,] . . . the later one prevails." *The Courage Co. v. The Chemshare Corp.*, 93 S.W.3d 323, 333 (Tex. Ct. App. 2002). It seems likely that the Acknowledgment was the later-drafted document—which would privilege its unilateral-modification provision—but the evidence as to the chronology of the drafting is, as noted, bare. In any event, application of this doctrine would cut in favor of the Court's conclusion. Therefore, the ultimate decision in this case rests most comfortably upon the doctrine of construing ambiguity against the drafter.

**IV.     Conclusion**

In sum, the Court DENIES Rhyan's Motion to Compel Arbitration. The parties shall confer and inform the Court as to whether DW Direct plans to appeal and, if not, as to whether this case should be reconsolidated with *Ames*.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 19th day of October, 2020.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE